T. H. ATKISON & others *vs.* W. L. MURFREE & others.

## October Term, 1872.

CHANCERY SALE, WHEN COMPLETE.—A sale of land, made by the master, is not complete and binding upon the purchaser until confirmation.

SAME, DUTY OF THE COURT.—And it is the duty of the court, while securing the rights of the successful litigants, to see that the property be sold for the best price that can be had.

SAME, OPENING BIDDINGS UPON AN ADVANCE ON BID.—It is allowable, therefore, to open the biddings alone upon the offer of a higher price, if the advance be so considerable as to furnish a sufficient inducement, under all the circumstances, to a resale of the property.

SAME, AMOUNT OF ADVANCE TO OPEN BIDDINGS.—The advance which ought to be deemed sufficient to open the biddings must be left to depend on the circumstances of the given case. An advance of sixteen hundred dollars is sufficient.

SAME, PRACTICE ON OPENING THE BIDDINGS.—The better practice, upon opening the biddings, is to authorize the master, upon notice in the usual way, to receive bids for a limited time, commencing with the advance offered, and requiring the bidders to make payments, and give notes as of the date of the

original sale, and the highest bidder at the end of the prescribed time to be declared the purchaser.

*Andrew Allison*, for purchaser.

*Ed. Mulloy*, for advance bidder.

THE CHANCELLOR :—In this suit, brought for the purpose of foreclosing a deed of trust made for the benefit of creditors and winding up an insolvent estate, a house and lot in Nashville were sold by the master, under order of the court, at public sale, and bid off by a purchaser at $8,900, who has complied with the terms of the sale by executing his notes, with good security, for the purchase-money, as required by the decree of sale. The cause is before me upon the proposition of a third person *to* advance the bid to $10,500, or about 18 per cent., bond, with good security, being executed to the clerk and master, in the penalty of $15,000, conditioned to start the biddings, if reopened, at the price of advance offered. The purchaser at the master's sale appears by his counsel and resists the application, and the questions involved have been ably argued.

The argument against the opening of the biddings starts out with the assumption that the authorities, in this state, are uniform, that something more is required than a mere advance on the price bid to justify the opening of the biddings in chancery sales. For this position the counsel cites *Owen* v. *Owen*, 5 Hum. 352 ; *Donaldson* v. *Young*, 7 Hum. 266 ; *Morton* v. *Sloan*, 11 Hum. 280 ; *Childress* v. *Hurt*, 2 Swan, 490 ; *Johnson* v. *Quarles*, 4 Cold. 615 ; and *Newland* v. *Gaines*, 1 Heisk. 720. And he might have added *Houston* v. *Aycock*, 5 Sneed, 406, and other cases. But an examination of these, and other authorities in this state, shows that the decisions and dicta are far from uniform, and that our courts have been reluctant to lay down the rule that a mere advance was sufficient, while they have often seized upon slight circumstances, of an intangible and unsatisfactory character, in connection with the advance, *to do* what the manifest equity of the case demanded, and reopen the biddings. In the

conflict of authority and dicta to be found in our own books upon the precise point now before me, the safest course seems to be to ascertain the principles which underlie the actual decisions, and follow them.

In England, the uniform ruling of the Court of Chancery has been that the bidder before the master acquires no right in the property until the sale has been confirmed. In other words, there is no binding contract of sale until the court has, by confirming the master's report, accepted the bid. The consequence is that until confirmation the bidder assumes no risk. If the property be destroyed by fire, or is deteriorated in value by any other casualty, the loss does not fall upon him. So, he has the right until confirmation to find out whether there have been any misrepresentations made in regard to the property, or whether there are any flaws in the title. As a counterpoise to these advantages, the court, for the benefit of its suitors, considered itself at liberty to receive advances on the bid, and to open the biddings if the advance would justify the act. The amount of advance necessary to accomplish this result has been fluctuating, and, perhaps, has never been rigidly fixed either in gross or in percentage by a positive rule to be applied to every case. The rule has been flexible and varied with the circumstances. Ten per cent. was at one time considered to be a proper minimum, but five per cent. has been received. The sum of £40 seems to have been recognized as the minimum in any case. 2 Dan. Ch. Pr. 1285 ; 1 Sug. Vend. 163.

In Ireland, a deposit of five per cent. advance and the payment of former purchaser's costs, will always open biddings, provided the total advance amounts to £40. *Aubrey* v. *Denny*, 2 Moll. 508 ; *Leland* v. *Griffith*, 2 Moll. 510.

Chancellor Kent, *clarum et venerabile nomen*, at an early day, laid down the rule, which seems to have been adhered to in New York, that, at a master's sale, a binding contract is made as soon as the hammer is down, and that the purchaser is at once entitled to all the rights which are conceded in England only after confirmation. The consequence of

this rule, carried to its logical result, is that from the moment the hammer of the auctioneer falls, all the risks of ownership follow, and that, as the property becomes the purchaser's, the circumstances necessary to open the biddings must be such as would afford good ground for equitable relief in contracts between individuals. Mr. Hoffman, in his Practice of Masters in Chancery, page 224, does not hesitate to condemn the reasoning upon which the conclusion is sought to be based, and it does not seem to have been adopted to its full extent by the courts of other states of the Union. Our own Court has expressly repudiated it. *Owen* v. *Owen*, 5 Hum. 352; *Morton* v. *Sloan*, 11 Hum. 278; *Childress* v. *Hurt*, 2 Swan, 487.

There is no conflict in our authorities, so far as sales of land are concerned, that the sale is not complete nor binding on the purchaser until confirmation. There is some conflict on this point in regard to sales of personalty, the usage in this state having been to deliver the property at the time of sale. *Polk* v. *Pledge*, 5 Cold. 384; *Newman* v. *Sloan*, 5 Cold. 390; *Graves* v. *Keaton*, 3 Cold. 8. But the latest decision relating to sales of personalty seems to restore the symmetry of the law, and makes the title depend on confirmation. *Johnson* v. *Johnson*, 2 Heisk. 521. But see *Saunders* v. *Stallings*, 5 Heisk. 65.

As a result of the rule in regard to sales of realty, it has been held that a purchaser may be released from his purchase, where the value of the property has been depreciated by the destruction of buildings by fire between the sale and confirmation. *Graves* v. *Keaton*, 3 Cold. 8. So, in *Wood* v. *Morgan*, 4 Hum. 372, a tender of money, for the redemption of real estate, sold under decree of the Chancery Court, made before the sale was confirmed was held to be premature. The purchaser, too, is entitled to rent only from confirmation. *Armstrong* v. *McClure*, 4 Heisk. 80. And a sale of the realty of an infant or married woman does not work a conversion until confirmation. *Jones* v. *Walkup*, 5 Sneed, 135; *Moore, ex parte*, 3 Head, 171; *Rogers* v. *Clark*, 1 Sneed, 665.

Under these circumstances the remark of McKinney, J., in *Childress* v. *Hurt*, 2 Swan, 491, seems to be well warranted: "The course of decisions on this subject," he says, "has conformed rather to the English practice, than to that of some of the American courts," referring especially to Chancellor Kent's views, 4 Kent Com. 192. This language is repeated with approbation by the court in *Eakin & Co.* v. *Herbert*, 4 Cold. 119. The logical deduction from these premises drawn by Judge McKinney, in continuation of the remark just quoted, seems to follow of course: "The principle being admitted," he says, "that a sale by a master is not complete, nor binding on the purchaser till confirmation of the report, the conclusion is easily arrived at, that, as it is equally the object and duty of the court to see, not merely that the sale is properly conducted, but also that the property shall be sold for the best price that can be had, it is allowable to open the biddings alone upon the ground of the offer of a higher price, if the advance be so considerable as to furnish a sufficient inducement, 'under all the circumstances, to a resale of the property." See also *Coffin* v. *Carruth*, 1 Cold. 194; *Lassell* v. *Powell*, 7 Cold. 282; *Newland* v. *Gaines*, 1 Heisk. 724.

Upon principle there can be no doubt of the correctness of the conclusion thus reached, and the weight of dicta and decision in this state is to the same effect. The rulings to the contrary are manifestly in conflict with the premises universally conceded in all of our cases.

If, now, we consider the policy of the different lines of decisions, the intolerable hardships of the one as evidenced in the case of *Houston* v. *Aycock*, 5 Sneed, 406, and the beneficial workings of the other as illustrated in *Childress* v. *Hurt*, 2 Swan, 491, must be obvious to every intelligent observer. The courts cannot ignore the fact that their suitors, whose property is compelled to be sold under decree, labor under many disadvantages in obtaining a fair price for their, it may be and often is, little all. The sales are frequently *in invitum*, when the parties are at a distance, and in no .

condition to find purchasers.· They require to be made at times when property is ruinously depressed. It is the duty of the courts, under these circumstances, while securing the rights of the successful litigant, to "see that the property shall be sold for the best price that can be had." As a general rule, too, it is to the interest of opposing litigants that the property should sell for the best price. A bidder who, as we have seen, runs no risk whatever until the sale is confirmed, can have little right to complain, if the advance is such as to make it inequitable to confirm, and he is released without loss, and with his necessary costs and expenses paid. Nor do I think that such sales will be injuriously affected by the knowledge that the bidder may not get the property at his bid, if it be known at the same time that the biddings will only be opened upon a substantial advance, that a resale will be promptly made, and that the bidder will have the opportunity of again bidding before the sale is finally confirmed.

"With respect," says McKinney, J., 2 Swan, 491, "to the advance which ought to be deemed sufficient to require that the biddings should be opened, this must be left to depend in some measure on the circumstances of the given case." The English minimum is manifestly too high for our state. Land in England is a commodity in which none but·the wealthy can indulge, and the costs of all judicial proceedings, even the opening of biddings at a master's sale, are heavy. In this state, on the other hand, land is comparatively cheap and a commodity in which all may deal, and·it is the policy of our institutions to keep it in the hands of the many. If a minimum is to be fixed at all, it ought necessarily to be far below the English standard. The Irish rule is much more appropriate to our condition of society. It is not necessary for me in this case to fix a minimum, nor to express an opinion as to what it should be. It is enough for me to say that an advance of sixteen hundred dollars is sufficient to render it "inequitable to confirm the sale," and to authorize the opening of the biddings.

It remains to be considered in what form the clerk and

master should be directed to receive new bids, and resell the property. The practice of the Court has not been uniform on this subject. In some Chancery Districts, and notably in this District, the practice has been to make a general order of resale, and for the master, after the usual advertisement, ·to again offer the property at public vendue, starting at the advance. The extension of the credit resulting from this course is an evil of which creditors, and other persons interested in the fund, have a right to complain, the notes given for the purchase-money being dated as of the resale. A better usage, more in accord with the English practice, prevails in other Districts. By this plan, the biddings are ordered to be kept open by the master for a specified time, say twenty or thirty days, to receive bids, notice of the fact being given in the usual way. The highest bidder, at the end of this time, will be required to give notes with good security as of the date of the first sale, and otherwise to comply with the terms and requirements of that sale. In this mode, all the benefits of opening the biddings will be obtained, without affecting the rights of creditors, or other persons entitled to the proceeds of sale. The decree will be framed accordingly.

NOTE.—Since writing the foregoing, I have been advised of a recent decision of the Supreme Court of the state at Knoxville, in the case of *Click* v. *Burrus,* now reported in 6 Heisk. 539, to the effect that biddings may be opened upon a mere increased bid, and that an advance of ten per cent. on the previous offer is sufficient for this purpose. Whether a less offer might not, in some cases, justify the opening of the biddings, is properly left undetermined.